**IN RE: Clotilde DAVIS, Debtor.**

**Case No. 14–52909**

United States Bankruptcy Court,
S.D. Ohio, Eastern Division.

Signed September 30, 2015

Filed October 1, 2015

Sondra O. Bryson, Columbus, OH, for Debtor.

Jordan S. Berman, Ohio Attorney General's Office, Donn D. Rosenblum, Attorney General of Ohio, Columbus, OH, for Intervenor.

## MEMORANDUM OPINION ON DEBTOR'S MOTION TO AVOID LIEN

C. Kathryn Preston, United States Bankruptcy Judge

This cause came on for hearing on February 5, 2015 to consider Debtor's Motion to Avoid Judicial Lien (Doc. 43) (the "Motion"), the response (Doc. 45) of Kenny Centre, LLC ("Creditor"), the response (Doc. 46) of the Ohio Attorney General (the "Attorney General"), and Debtor's re-

ply (Doc. 49)[1]. Present at the hearing were attorney Sondra Bryson as counsel for Debtor, attorney Jeffrey Jordan as counsel for Creditor, and attorneys Jordan Berman and Donn Rosenblum as counsel for the Attorney General.

The Motion seeks avoidance of Creditor's judicial lien on Debtor's residential real property pursuant to 11 U.S.C. § 522(f). The issues before the Court are (1) whether certain amendments to Ohio's exemption statute violate the Takings Clause of the United States Constitution and/or the Ohio Constitution, and (2) whether Debtor's application of Ohio's increased homestead exemption to avoid Creditor's lien violates the Ohio Constitution's prohibition of retroactive laws.

## I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05–02, entered by the United States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (K).

## II. Background

### A. *Findings of Fact*

On or about March 28, 2001, Debtor acquired certain residential real property commonly known as 6025 Acropolis Way, Columbus, Ohio 43231 (the "Property"). Debtor granted a first mortgage on the Property on December 26, 2002, to secure

1. This matter originally came before the Court on Creditor's objection (Doc. 8) (the "Objection") to Debtor's claimed exemptions, and the related briefs of the parties, including that of the Attorney General, who was invited to intervene in the matter because the Objection called in into question the constitutionality of an Ohio statute. *See* 28 U.S.C. § 2403(b). The Court overruled the Objection without prejudice, determining that, since Debtor had not yet sought to avoid Creditor's lien, the Objection was premature and not ripe for adjudication. All parties incorporated by reference their filings related to the Objection into their respective filings related to the instant Motion.

a loan in the original principal amount of $89,250.00 (the "Mortgage Loan"). On January 17, 2006, Creditor obtained a judgment lien on the Property pursuant to a certificate of judgment filed in the Franklin County, Ohio, Court of Common Pleas, judgment case number 06 JG 000275 (the "Judgment Lien"). The Judgment Lien secures a judgment in the original amount of $30,134.09, plus costs and interest from December 29, 2005. Creditor renewed the Judgment Lien on November 12, 2010.

Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on April 24, 2014 (the "Petition Date"). As of the Petition Date, the value of the Property was $119,700.00, the balance of the Mortgage Loan was $52,503.00, and the outstanding balance of the judgment secured by Creditor's Judgment Lien was $70,567.65. *See* Proof of Claim 1–1, May 6, 2014. The Property is also encumbered by seven (7) liens held by the Ohio Department of Taxation (collectively, the "Tax Liens")[2]. The Tax Liens secure separate tax debts in the original amount of $6,038.49 in the aggregate[3]. On her Amended Schedule C (Doc. 21), Debtor claimed an exemption in the Property of $125,000.00 pursuant to Ohio Revised Code § 2329.66(A)(1).

### B. *Amendments to Ohio's Homestead Exemption*

At the time Creditor obtained the Judgment Lien, Ohio Revised Code § 2329.66(A)(1) (hereinafter, the "Homestead Exemption") allowed persons domiciled in the state of Ohio to exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, "that person's interest, not to exceed five thousand dollars, in one parcel or item of real or personal property that the person or a dependent of the person uses as a residence." Ohio Rev. Code § 2329.66(A)(1)(b) (2005). In 2008, the Ohio General Assembly amended Ohio Revised Code § 2329.66 to increase the Homestead Exemption to $20,200.00 (the "2008 Amendment")[4]. Then, in 2012, the General Assembly passed Substitute House Bill No. 479 ("H.B. 479"). Effective March 27, 2013, H.B. 479 increased the Homestead Exemption to $125,000.00 (the "2013 Amendment," and with the 2008 Amendment, generally, an "Amendment" or the "Amendments")[5].

### C. *Arguments of the Parties*

Pursuant to 11 U.S.C. § 522(f), Debtor's Motion seeks to avoid Creditor's Judgment Lien against the Property on the basis that such lien fully impairs Debtor's claimed Homestead Exemption of $125,000.00. Creditor does not contest that the Judgment Lien is avoidable in its entirety, if Debtor's Homestead Exemption is based on the 2013 Amendment; nor does Creditor contest that applicable law prescribes the use of the 2013 Amendment

---

**2.** The Motion does not seek to avoid any of the Tax Liens.

**3.** The parties did not introduce any evidence regarding the balance of the debts secured by the Tax Liens as of the Petition Date, and the amount listed on Debtor's schedules is simply the sum of the original amounts of such debts. Thus, for purposes of this opinion, the Court will treat the original amount of each debt as the balance of each debt on the Petition Date.

**4.** The 2008 Amendment became effective September 30, 2008.

**5.** The 2008 Amendment and 2013 Amendment both provided for periodic adjustments to the amount of the exemption for inflation. *See* Ohio Rev. Code § 2329.66(B). The current adjusted allowance for the Homestead Exemption is $132,900.00.

in determining whether Debtor may avoid the Judgment Lien under § 522(f). Rather, Creditor argues that, because its Judgment Lien attached to the Property in 2006, application of the 2008 Amendment or the 2013 Amendment to avoid any portion of the Judgment Lien would impair Creditor's already-vested substantive rights, and thus, violate the Ohio Constitution's prohibition of retroactive laws. Creditor further contends that the 2008 Amendment and/or the 2013 Amendment, as applied to the Judgment Lien, results in a complete deprivation of value of the Judgment Lien, thereby violating Creditor's rights under the Takings Clause of both the United States Constitution and the Ohio Constitution. Accordingly, Creditor seeks to limit Debtor's Homestead Exemption to $5,000.00—the Homestead Exemption in effect at the time the Judgment Lien attached to the Property.

In response, Debtor and the Attorney General assert that neither the 2008 Amendment nor the 2013 Amendment are being applied retroactively. They contend that the focal point is not when the property being impaired is acquired, but when the exemption is being asserted, which occurs at the time of a forced sale or on the date of commencement of a bankruptcy case. As to Creditor's assertion that the 2008 Amendment and/or the 2013 Amendment are unconstitutional takings, the Attorney General and Debtor aver that the increases in the Homestead Exemption were merely the Ohio legislature adjusting the benefits and burdens between debtors and creditors to provide greater protection to homeowners, which does not amount to an unconstitutional taking. Debtor further claims that the 2008 Amendment and the 2013 Amendment do not actually deprive Creditor of any property; rather, it is the application of § 522(f) that extinguishes

Creditor's property rights. Therefore, as a Homestead Exemption does not, in and of itself, impair Creditor's property rights, Debtor contends that Creditor's attack on the 2008 Amendment and 2013 Amendment is conceptually flawed.

## III. Analysis

### A. *Section 522 and Impairment of the Judgment Lien*

Section 522(b) of the Bankruptcy Code allows individual debtors to exempt from property of the estate the property listed in § 522(d) or any property that is exempt under state or local law applicable on the date of the filing of the petition[6]. 11 U.S.C. § 522(b). However, a state may "opt-out" of the § 522(d) exemptions and limit debtors to the exemptions listed under state or local law and applicable non-bankruptcy federal law. 11 U.S.C. § 522(b)(3). Ohio has done so, and thus, the debtors domiciled in Ohio may only claim exemptions authorized under Ohio Revised Code § 2329.66, other applicable state or local law, and applicable nonbankruptcy federal law. *See* Ohio Rev. Code § 2329.662 ("[T]his state specifically does not authorize debtors who are domiciled in this state to exempt the property specified in the 'Bankruptcy Reform Act of 1978[.]' ").

Pursuant to 11 U.S.C. § 522(f), a debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—(A) a judicial lien[.]" 11 U.S.C. § 522(f)(1). Section 522(f)(2)(A) describes how to calculate the extent to which a lien impairs an exemption:

> For the purposes of this subsection, a lien shall be considered to impair an

---

**6.** Section 522(b)(3)(A) also describes the test for determining which State or local law is applicable. In the instant case, it is undisputed that Ohio law is applicable.

exemption to the extent that the sum of—

 **(i)** the lien;

 **(ii)** all other liens on the property; and

 **(iii)** the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A).

In the instant case, the parties do not dispute that the 2013 Amendment estab-lished the amount of the Homestead Exemption in effect on the date Debtor filed her petition under Chapter 7 of the Bankruptcy Code, and thus, if the Bankruptcy Code and Ohio Revised Code are applied as written, the 2013 Amendment is applicable. In that instance, the calculation of the extent to which the Judgment Lien impairs Debtor's Homestead Exemption is as follows:

| | | |
|---|---:|---:|
| Creditor's Judgment Lien | $ 70,567.65 | |
| Mortgage Loan | $ 53,503.00 | |
| Tax Liens | $ 6,038.49 | |
| Debtor's Exemption (2013 Amendment) | $ 125,000.00 | |
| Total Liens & Exemption | | $ 255,109.14 |
| Less: | | |
| Debtor's Interest in the Property | | $ (119,700.00) |
| Extent to Which the Judgment Lien Impairs Exemption | | $ 135,409.14 |

Debtor's exemption is impaired "to the extent that the sum of [all liens and the exemption] exceeds the value [of] the debtor's interest in the property" absent the liens. 11 U.S.C. § 522(f)(2)(A). The impairment ($135,409.14) obviously exceeds Creditor's Judgment Lien ($70,567.65), and therefore, the Judgment Lien is avoidable in its entirety. However, if the Homestead Exemption is limited to $5,000.00, as Creditor contends is mandated by the United States and Ohio Constitutions, then the Homestead Exemption would only be impaired to the extent of $15,409.14, and $55,158.51 of the Judgment Lien would remain attached to the Property. If the 2008 Amendment were applied to the calculation under § 522(f)(2)(A), the Homestead Exemption would be impaired to the extent of $30,609.14, and the Judgment Lien would remain attached to the Property in the amount of $39,958.51.[7].

**B.** *The Ohio Constitution's Prohibition of Retroactive Laws.*

The Ohio Constitution prohibits the Ohio General Assembly from passing retroactive laws. OHIO CONST. art. II, § 28 ("The general assembly shall have no power to pass retroactive laws[.]") (hereinafter, the "Retroactivity Clause"). "A statute is presumed to be prospective in its operation unless expressly made retrospective." Ohio Rev. Code § 1.48. A retroactive statute is only deemed unconstitutional if it impairs vested substantive rights. *Hyle v. Porter*, 117 Ohio St.3d 165,

---

**7.** This calculation is based on a Homestead Exemption of $20,200.00—the exemption amount set by the 2008 Amendment. The Court has not ascertained what the current Homestead Exemption would be under the 2008 Amendment (in the absence of the 2013 Amendment), as adjusted for inflation. *See* n.5, *supra*.

882 N.E.2d 899, 901 (2008). Thus, the Ohio Supreme Court has articulated a two part test to determine whether a statute is unconstitutionally retroactive: It must first be determined whether the General Assembly expressly made the statute retroactive. *Id.* (citing *State v. Consilio,* 114 Ohio St.3d 295, 871 N.E.2d 1167, 1171 (2007)). If the statute is expressly retroactive, then it must be determined whether the right affected is substantive or remedial in nature. *Id.* Even if a statute is prospective in its operation, it may nonetheless implicate the Retroactivity Clause if it divests a party of substantive rights, particularly property rights, which vested prior to the enactment of the statute. *In re Kyle,* 510 B.R. 804, 814 (Bankr.S.D.Ohio 2014).

### i. *The 2008 Amendment and 2013 Amendment are not retroactive.*

In looking at the Amendments, the Court finds no express language evidencing an intent on the part of the Ohio General Assembly to apply either the 2008 Amendment or 2013 Amendment retroactively. Thus, the Amendments must be applied only prospectively. *O'Brien v. Hill,* 197 Ohio App.3d 14, 965 N.E.2d 1050, 1054 (2012) ("It is axiomatic that if there is no clear indication of retroactive application, then the statute may only apply to cases which arise subsequent to its enactment." (citations omitted)).

The Tenth District Court of Appeals in *Hill* addressed whether Ohio Revised Code § 2950.034(A), which prohibits a sexual offender from residing within 1,000 feet of a school, violated the Retroactivity Clause. In that case, the appellee had owned and resided in a particular home since 1991. The statute was passed in 2003. In 2005, the appellee was convicted of attempted unlawful conduct with a minor, and in 2006 a high school opened

within 1,000 feet of the appellee's home. The county prosecutor filed a complaint seeking to enjoin the appellee from residing within 1,000 feet of the school. The appellee was granted summary judgment; the county prosecutor appealed.

On appeal, the appellee maintained that, because he established residency prior to the effective date of the residency restrictions in question, the statute was being retroactively applied to him impermissibly. In determining that the restrictions were being applied prospectively, the court stated:

> While appellee may have purchased his home in 1991, the prohibited act, i.e., being a sexual offender and residing within 1,000 feet of a school, did not arise until the latter half of 2006. The prohibited act is not simply establishing a residence or occupying residential premises, but doing so as a sexual offender and within 1,000 feet of a school. This circumstance arose in 2006, which is subsequent to the time the residency restrictions went into effect on July 31, 2003. Thus, we cannot conclude that the residency restrictions of R.C. 2950.034 are being applied retrospectively or, put another way, to facts that arose prior to their existence.

*Hill,* 965 N.E.2d at 1055.

Based on the reasoning in *Hill,* the Court likewise cannot conclude that Debtor's application of the 2013 Amendment is retroactive. In the instant case, because, through the operation of 11 U.S.C. § 522(b), Debtor may exempt from property of the estate the property listed in Ohio Revised Code § 2329.66, Debtor's right to assert an exemption in such property did not arise until a bankruptcy estate was created by Debtor filing a petition under Chapter 7 of the Bankruptcy Code. *See* 11 U.S.C. § 541(a) ("The commencement of a case under section 301, 302, or 303 of

this title creates an estate."). As Debtor commenced this case subsequent to the effective date of the 2013 Amendment, the Court finds that application of the 2013 Amendment is prospective in nature. *See also In re Kyle,* 510 B.R. 804, 814 (Bankr. S.D.Ohio 2014) ("[A]pplying the Amended Homestead Exemption to bankruptcy cases filed after its effective date is, in fact, a prospective application of the amendment." (citing *In re Pursley,* 2014 WL 293557, at *10 (Bankr.N.D.Ohio Jan. 23, 2014)).

### ii. *The Amendments do not divest Creditor of a substantive right.*

Generally, a determination that a statute is being applied prospectively ends the inquiry. *Longbottom v. Mercy Hosp. Clermont,* 137 Ohio St.3d 103, 998 N.E.2d 419, 425 (2013). However, a statute that applies prospectively may nonetheless implicate the Retroactivity Clause. *Id.*

> [T]he constitutional limitation against retroactive laws includes a prohibition against laws which *commenced on the date of enactment and which operated in futuro, but which, in doing so, divested rights,* particularly property rights, which had been vested anterior to the time of enactment of the laws.

*Id.* (emphasis in original) (internal citations omitted). In order to consider whether the statute may have retroactive effects in this case, the Court must determine the nature and extent of the rights associated with the Judgment Lien.

Under Ohio law, a judgment lien is created by filing a certificate of judgment in accordance with § 2329.02 of the Ohio Revised Code. The lien attaches to all real property located in the county on the date the certificate of judgment is filed. Ohio Rev. Code § 2329.02.

> R.C. 2329.02 is intended to create a specific lien upon the lands and tenements of the judgment debtor within the county at the time there is filed in the office of the clerk of the court of common pleas of such county a certificate of judgment. The lien applies specifically to all such property identified as belonging to the debtor at the time of the filing of the certificate and may be enforced as a specific lien pursuant to R.C. 2323.07 by a foreclosure action.

*Feinstein v. Rogers,* 2 Ohio App.3d 96, 440 N.E.2d 1207, 1210 (1981). Thus, because a judgment lien under Ohio law attaches to *specific property* of the judgment debtor, such a lien is a significant property interest entitled to the protections of the U.S. Constitution and Ohio Constitution. *See Verba v. Ohio Cas. Ins. Co.,* 851 F.2d 811, 815 (6th Cir.1988) (finding that judgment liens "are intangible nonpossessory interests attached to a particular piece of property, and ... are constitutionally protected property interests within the meaning of the due process clause of the fifth amendment"); *United States v. Perry,* 360 F.3d 519, 526 (6th Cir.2004) ("A judgment lien is a constitutionally protected property right."). Accordingly, Creditor obtained a constitutionally protected property right when the Judgment Lien attached to the Property in 2006. However, the Court cannot conclude that the 2008 Amendment or 2013 Amendment divested Creditor of any property rights.

Ohio Revised Code § 2329.66 in effect in 2006, but for the amount of the exemptions, is substantially similar to the current statute. In 2006, § 2329.66(C) provided that a person's "interest" in property was determined as follows:

> (1) In bankruptcy proceedings, as of the date a petition is filed with the bankruptcy court commencing a case under Title 11 of the United States Code;

(2) In all cases other than bankruptcy proceedings, as of the date of an appraisal, if necessary under section 2329.68 of the Revised Code, or the issuance of a writ of execution.

Ohio Rev. Code § 2329.66 (2006). Identical language appears in subsection (D) of the current version of Ohio Revised Code § 2329.66.

■ Ohio courts have interpreted clause (2) above as dictating that, in state court proceedings, such as a foreclosure action, the applicable exemption amount is to be determined either at the time an appraisal is filed, or at the time a writ of execution is issued, if no appraisal is filed. *See First Nat'l Bank of Pa. v. Jones,* 6 N.E.3d 1231, 1234 (Ohio Ct.App.2014) ("A logical reading of the statute leads to the conclusion that the amount of the exemption should be determined as of the date [the judgment debtor's] interest in the exemption arises, since the amount of the exemption is directly tied to the determination of the debtor's interest."). Furthermore, 11 U.S.C. § 522(b), the pertinent parts of which have remained unchanged since Creditor's Judgment Lien attached to the Property, and clause (1) listed above, mandate that exemptions are determined as of the date of commencement of a bankruptcy case. *In re Kyle,* 510 B.R. 804, 809 (Bankr.S.D.Ohio 2014) ("[B]oth the Bankruptcy Code and Ohio Exemption Statute point to the bankruptcy petition filing date as the crucial date for determining a debtor's entitlement to specific exemptions, including the homestead exemption, and the appropriate amount."). This proposition has also long been supported by case law. *See In re Cope,* 80 B.R. 426, 427 (N.D.Ohio 1987) (stating, "[c]ase law strongly supports the proposition that a debtor's right to exemptions is determined as of the date the Petition is filed," and citing case law as far back as 1924). Thus, at the time Cred-

itor obtained the Judgment Lien, the law was clear that the applicable Homestead Exemption would be the amount in effect at the time of any future bankruptcy filing or forced sale of the Property.

■ The Court therefore finds that, within the bundle of rights, burdens, and obligations that Creditor obtained when it filed the Judgment Lien, was the subjection of its property interest to any Homestead Exemption in effect at the time of any future forced sale of the Property or bankruptcy filing, and the possibility that any amended Homestead Exemption would adversely affect its interest. Because, at the time Creditor obtained its property rights in the Judgment Lien, those rights were subject to an uncertain, future Homestead Exemption amount, the Court cannot find that, by enacting the 2008 Amendment or 2013 Amendment, the Ohio General Assembly altered any of Creditor's preexisting property rights. *See, e.g., First Nat'l Bank of Pa.,* 6 N.E.3d 1231.

Creditor also had an obligation to protect its property interest:

[A creditor knows or should know] that the Ohio General Assembly periodically amends the exemption statute and, thus, the amount of the homestead exemption [is] subject to change. While it is true that any change in the homestead statute could affect a creditor's ability to foreclose on a judgment, a creditor has an obligation to timely and diligently enforce its rights under Ohio law.

*In re Pursley,* 2014 WL 293557, at *12 (Bankr.N.D.Ohio Jan. 23, 2014). *Accord First Nat'l Bank of Pa.,* 6 N.E.3d at 1235.

Creditor had approximately two and a half (2½) years to foreclose its Judgment Lien while the Homestead Exemption was $5,000.00, and, after the enactment of the 2008 Amendment, Creditor had an additional four and a half (4½) years to fore-

close the Judgment Lien prior to the effective date of the 2013 Amendment. Creditor's failure to protect its interest "should not deprive the debtor of the homestead exemption amount to which [s]he is otherwise entitled." *Id.* (citing *In re Depascale,* 496 B.R. 860, 874 (Bankr. N.D.Ohio 2013)).

### iii. The Bankruptcy Code preempts any prohibition of the application of the 2013 Amendment to the instant case by the Ohio Constitution.

 There are three different types of preemption under the Supremacy Clause of the United States Constitution: (1) express preemption; (2) implied preemption; and (3) conflict preemption. *Gibson v. Am. Bankers Ins. Co.,* 289 F.3d 943, 948–49 (6th Cir.2002). Express preemption occurs when state action is foreclosed by the express language in a congressional enactment. *Lorillard Tobacco Co. v. Reilly,* 533 U.S. 525, 541, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001). "Implied preemption occurs if a scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it, if the Act of Congress ... touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject, or if the goals sought to be obtained and the obligations imposed reveal a purpose to preclude state authority." *Gibson,* 289 F.3d at 949 (citations and internal quotation marks omitted) (alterations in original). Conflict preemption occurs when "compliance with both federal and state regulations is a physical impossibility, or when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations and internal quotation marks omitted). In the instant case, any state law limitation on Debtor's use of the Homestead Exemption provided by the 2013 Amendment conflicts with § 522 of the Bankruptcy Code, and thus, any such law is preempted.

As discussed above, 11 U.S.C. § 522(b) directs that a debtor may exempt from property of the estate "any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition[.]" 11 U.S.C. § 522(b). Although not entirely clear, Creditor's argument may be that on the date Debtor filed the petition, state law, i.e., the Ohio Constitution, prohibited application of the 2008 Amendment and 2013 Amendment to Debtor, and as a result, the state law applicable to Debtor on the Petition Date provided for a maximum Homestead Exemption of $5,000.00. However, because any prohibition of the application of the Amendments by the Ohio Constitution would be based upon the effect the Amendments had on the Judgment Lien, Creditor's argument must fail.

11 U.S.C. § 522(f)(2)(A) instructs that, in determining the extent to which a lien impairs an exemption, and consequently, the extent that a judicial lien may be avoided under § 522(f)(1), one must determine the extent that the sum of all the liens on the property, plus the amount of the exemption that the debtor could claim *if there were no liens on the property,* exceeds the value of the debtor's interest in the property. 11 U.S.C. § 522(f). In other words, federal law directs us to consider the subject property as if unencumbered by any liens, and determine the exemption that the debtor could claim under § 522(b) in such property. Therefore, any state constitutional limitation of the Homestead Exemption on the basis that application of the 2008 Amendment or 2013 Amendment affects the Judgment Lien, is in direct conflict with the Bankruptcy

Code's direction to analyze Debtor's interest in the Property as if unencumbered by liens.

 The Bankruptcy Code mandates that the applicable exemption amount is the amount of the exemption the debtor could claim in the subject property in the absence of liens, pursuant to the applicable law in effect on the date of filing of a bankruptcy case. 11 U.S.C. § 522(b), (f). In the instant case, it is undisputed that § 522 prescribes the use of the exemption amount set forth in the 2013 Amendment. Therefore, any state law, constitutional or otherwise, that limits application of the 2013 Amendment to this matter, is preempted by the Bankruptcy Code, and is unenforceable. *See In re Kyle*, 510 B.R. 804, 815 (Bankr.S.D.Ohio 2014) ("Inconsistent state laws are preempted by conflicting Bankruptcy Code provisions." (citing *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 682–83 (1st Cir. 1999))).

### C. *The Takings Clause under the U.S. and Ohio Constitutions*

The Takings Clause of the Fifth Amendment to the U.S. Constitution prohibits the government from taking private property for public use, without just compensation. U.S. CONST. amend. V. That clause is made applicable to the states through the Fourteenth Amendment. *Kelo v. City of New London, Conn.*, 545 U.S. 469, 472 n. 1, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005). The Ohio Constitution contains a similar prohibition:

> Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure, or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money, and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.

OHIO CONST. art. I, § 19. As previously discussed, judgment liens under Ohio law are property interests entitled to the protections of the U.S. and Ohio Constitutions, including those protections afforded by the Takings Clause. *See 1256 Hertel Ave. Assocs., LLC v. Calloway*, 761 F.3d 252, 263 (2nd Cir.2014) (finding that judgment liens on specific property created pursuant to New York law are property interests protected by the Takings Clause).

 The United States Supreme Court has recognized two classes of takings: physical takings and regulatory takings. *1256 Hertel Ave. Assocs.*, 761 F.3d at 263. Physical takings are the "classic taking[s] in which the government directly appropriates private property for its own use." *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (brackets and internal quotation marks omitted). Physical appropriations are *per se* takings that require just compensation to the property owner. "A regulatory taking, by contrast, occurs where even absent a direct physical appropriation, governmental regulation of private property 'goes too far' and is 'tantamount to a direct appropriation or ouster.'" *1256 Hertel Ave. Assocs.*, 761 F.3d at 263 (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005)).

In the instant case, the application of the 2008 Amendment or the 2013 Amendment does not result in the direct appropriation

of the Judgment Lien to the government for public use, and therefore, any taking in this case would be regulatory in nature. The analysis required to determine if a regulatory taking has occurred under the Ohio Constitution is the same analysis required to determine if a regulatory taking has occurred under the U.S. Constitution. *See, e.g., Wymsylo v. Bartec, Inc.,* 132 Ohio St.3d 167, 970 N.E.2d 898, 914–15 (2012) (applying federal regulatory takings jurisprudence and determining that the regulation in question did not result in "the type of taking contemplated by either the Fifth Amendment to the United States Constitution or the Ohio Constitution, Article I, Section 19"). Thus, the Court only needs to conduct a single analysis [8].

### i. The 2008 Amendment and 2013 Amendment are not regulatory takings.

The Supreme Court has carved out two discrete categories that constitute a *per se* regulatory taking, and therefore require no case specific inquiry. *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). The first category "encompasses regulations that compel the property owner to suffer a physical 'invasion' of his property." *Id.* In the second category are "regulation[s] [denying] all economically beneficial or productive use of land." *Id.* "Beyond those categories, the Supreme Court has 'generally eschewed any set formula, instead pre-

ferring to engage in essentially ad hoc, factual inquiries.'" *A & D Auto Sales, Inc. v. United States,* 748 F.3d 1142, 1151 (Fed.Cir.2014) (quoting *Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886).

It is clear that the Amendments at issue in this case did not compel Creditor to suffer any physical invasion of its property. Thus, the Court must determine whether the Amendments fall within the second *per se* regulatory taking category, and if not, whether the particular facts of this case otherwise implicate the Takings Clause.

### a. Neither 2008 Amendment, nor the 2013 Amendment are a per se regulatory taking.

 *Lucas v. South Carolina Coastal Council* involved state legislation that effectively barred the petitioner from erecting any residential structures on certain real property. The Supreme Court addressed whether the legislation amounted to a taking, and thus, required payment of just compensation. The petitioner had purchased the parcels prior to the enactment of the legislation, and at the time of the purchase, the lots were zoned to permit the petitioner's intended use. The trial court had found that the state legislation rendered the lots "valueless." *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1007, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). In holding that such a restriction constitutes a taking [9], Supreme Court stated that

---

**8.** Article I, § 19 of the Ohio Constitution affords greater protection than the federal Takings Clause in certain instances of physical takings, however. *Compare Kelo v. City of New London, Conn.,* 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005) (holding that a city's use of its eminent domain power to take property for the purpose of economic development satisfies the "public use" requirement of the federal Takings Clause), *with Norwood v. Horney,* 110 Ohio St.3d 353, 853 N.E.2d 1115 (2006) (finding that an economic or

financial benefit alone is insufficient to satisfy the public-use requirement of Article I, § 19 of the Ohio Constitution).

**9.** The Supreme Court ultimately remanded the case to the lower courts to address respondent's argument that principles of nuisance and property law would, notwithstanding the restriction in question, prohibit the petitioner's intended use. If that were the case, nothing would have been taken by the challenged restriction. *Lucas v. S.C. Coastal*

"when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Id.* at 1019, 112 S.Ct. 2886 (emphasis in original).

The Supreme Court made it clear that this categorical rule only applies to situations where the regulation results in a *complete* deprivation of all economically beneficial uses. The example used in a footnote to the majority opinion in *Lucas,* illustrates that even if a regulation diminishes the value of a landowner's property by ninety-five percent (95%), such deprivation does not result in a categorical taking. *Lucas,* 505 U.S. at 1019 n. 8, 112 S.Ct. 2886. However, even in instances where there is a complete deprivation of all economically beneficial uses of property, it is unclear whether the categorical rule only applies to cases involving real property, or if it may be extended to protect personal property. In *Lucas,* the Supreme Court continually referred to regulations of "land" and "real property," and thus, some courts have limited the *Lucas* test to situations involving real property. *See Hawkeye Commodity Promotions, Inc. v. Vilsack,* 486 F.3d 430, 441 (8th Cir.2007) ("[I]t appears that *Lucas* protects real property only."); *Unity Real Estate Co. v. Hudson,* 178 F.3d 649, 674 (3d Cir.1999) ("[T]he categorical approach has only been used in real property cases[.]") The Federal Circuit Court of Appeals has expanded the categorical test to certain cases involving tangible personal property. *See, e.g., Maritrans Inc. v. United States,* 342 F.3d 1344, 1354 (Fed.Cir.2003) (barges); *Rose Acre Farms, Inc. v. United States,* 373 F.3d 1177, 1196 (Fed.Cir.2004) (chickens). This Court, however, has been unable to find any case addressing whether the cate-gorical test described in *Lucas* applies to intangible personal property, such as judgment liens.

Given the Supreme Court's language in *Lucas,* and the hesitancy of other courts to expand the *Lucas* test, the Court doubts that the categorical test was meant to apply to intangible personal property. However, the resolution of that issue is unnecessary at this juncture, as the Court cannot find that the either the 2008 Amendment or 2013 Amendment resulted in a complete deprivation of the value of the Judgment Lien.

As previously discussed, Ohio Revised Code § 2329.66 allows an individual to hold certain property "exempt from *execution, garnishment, attachment, or sale* to satisfy a judgment or order[.]" Ohio Rev. Code § 2329.66 (emphasis added). Ohio courts have interpreted this language to mean that a "homestead exemption is not effective until there is an involuntary execution that subjects the property to judicial sale." *See First Nat'l Bank of Pa. v. Jones,* 6 N.E.3d 1231, 1234 (Ohio Ct.App.2014) (quoting *Adkins v. Massie,* 2001 WL 803031, *3 (Ohio Ct.App.2001)). Accordingly, any Homestead Exemption could not directly affect any potential recovery on the Judgment Lien unless and until the Property became subject to an involuntary execution or Debtor filed bankruptcy, upon which, Creditor would be entitled to recover the value of Debtor's equity in the Property to the extent it exceeded the applicable Homestead Exemption. Thus, to the extent that, at the time the 2008 Amendment and 2013 Amendment were passed, Debtor's equity in the Property exceeded the applicable Homestead Exemption amount, the Amendments did not foreclose all possibility of recovery on the Judgment Lien. Creditor, however, failed to introduce evidence regarding the extent of Debtor's equity in the Property at the

*Council,* 505 U.S. 1003, 1031–32, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

time each Amendment became effective, and therefore, the Court cannot determine what affect the passage of either Amendment had on Creditor's potential recovery in the event of a future forced sale of the Property or bankruptcy filing.

Further, assuming *arguendo* that the Amendments did extinguish any chance of recovery upon a forced sale or bankruptcy, the Court cannot assume that the rights retained by Creditor until any forced sale or bankruptcy were completely valueless. For example, if Debtor had refinanced or voluntarily sold the Property, the Judgment Lien would have attached to proceeds of the sale or refinance unaffected by any Homestead Exemption. The Judgment Lien remained a cloud on Debtor's title to the Property, and Creditor may have been able to negotiate for something of value in exchange for the release of the Judgment Lien. Similarly, if Debtor stopped using the Property as her homestead and thereby lost any right to the Homestead Exemption, the Amendments would have no effect on the Creditor's Judgment Lien, even upon a forced sale or bankruptcy. Accordingly, it seems that, regardless of the extent of Debtor's equity in the Property at the time each Amendment became effective, there still remained a possibility of some recovery on the Judgment Lien.

For the foregoing reasons, the Court cannot determine that the 2008 Amendment and/or the 2013 Amendment denied Creditor all economically beneficial or productive use of the Judgment Lien, and thus, application of either Amendment to Creditor's Judgment Lien does not result in a *per se* regulatory taking under *Lucas*.

b. *Under an ad hoc analysis, the facts and circumstances of this particular case do not implicate the Takings Clause.*

Having determined that the Amendments do not constitute a *per se* regulatory

taking, the Court must conduct an *ad hoc* analysis to determine whether the 2008 Amendment and/or the 2013 Amendment go "too far" in regulating Creditor's Judgment Lien. *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1014, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) ("[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). The Supreme Court has identified three (3) significant factors to consider when determining whether a regulation goes too far: (1) the character of the government action; (2) the economic impact of the regulation on the claimant; and (3) the extent to which the regulation interferes with the claimant's reasonable investment-backed expectations. *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).

First, the character of the government action is not that of a taking. The Amendments do not amount to a physical invasion of Creditor's property, nor do the Amendments result in the appropriation of Creditor's property. With the Amendments, the Ohio General Assembly merely increased the protections afforded to the homestead of a judgment debtor.

> Legislative tinkering of this sort inevitably creates individual winners and losers, for one man's defense is another's obstacle. But "it cannot be said that the Taking[s] Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another."

*1256 Hertel Ave. Assocs., LLC v. Calloway,* 761 F.3d 252, 265 (2nd Cir.2014) (quoting *Connolly v. Pension Benefit Guar. Corp.,* 475 U.S. 211, 223, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986)).

Next, the economic impact of the 2008 Amendment and 2013 Amendment on

Creditor, and its effects on Creditor's investment backed expectations, likewise do not weigh in favor of finding a taking. In *1256 Hertel Avenue Associates,* the Second Circuit Court of Appeals addressed an issue nearly identical to the issue in the instant matter. In that case, a 2005 amendment to New York's homestead exemption law increased the exemption amount from '$10,000.00 to $50,000.00. Subsequent to the increase, the debtor filed a petition under Chapter 7 of the Bankruptcy Code. As of the petition date in that case, the debtor's property was valued at $110,000.00, the balance of the first mortgage was $85,000.00, and thus, the debtor had equity of $25,000.00 in the property. The debtor then sought to avoid the creditor's lien using the $50,000.00 exemption amount. The creditor objected, alleging that, but for the 2005 increase in the New York exemption amount, there would be some non-exempt equity to satisfy the judgment. The creditor therefore contended that it suffered an adverse economic impact in violation of the Takings Clause, as a result of the increased exemption. The court rejected that argument:

> [The creditor's] reasoning ... rests on the factually unsupported assumption that its judgment lien had value before the passage of the 2005 Amendment. The record contains no evidence as to [the debtor's] equity in her home on August 29, 2005, the day before the amendment took effect. If on that date she held $10,000 or less in home equity, [the creditor's] judgment lien would have been worthless, since [the debtor] could have protected all of her home equity under the then-applicable $10,000 exemption. [The creditor] therefore has not shown the 2005 Amendment, in fact, affected its economic interests.

*1256 Hertel Ave. Assocs.,* 761 F.3d at 265.

In the instant case, Creditor's argument is the same as the creditor's argument in *1256 Hertel Avenue Associates,* and it has the same defect. At the time this case was filed, based on the value of Debtor's Property, the balance of the First Mortgage Loan, and the balance of the Tax Liens (but not including Creditor's Judgment Lien), Debtor's equity in the Property totaled $60,158.51. If the 2008 Amendment and/or 2013 Amendment are applicable to this action, Debtor will be able to avoid a larger portion of the Judgment Lien than she otherwise would if the applicable exemption amount was $5,000.00—the exemption amount in effect when Creditor obtained the Judgment Lien. Therefore, Creditor claims that the 2008 Amendment and/or the 2013 Amendment adversely impact its economic interests in violation of the Takings Clause. However, as previously discussed, Creditor provided no evidence regarding the amount of Debtor's equity in the Property immediately before either Amendment took effect. The Court is therefore unable to discern whether the enactment of either Amendment actually had any adverse economic impact on Creditor.

■ Assuming that the Amendments had some adverse impact on Creditor's economic interests, that alone does not give rise to a taking. "[T]he relevant question is not whether governmental action has ·affected a party's interests in some way but, rather, the extent to which the challenged governmental action has upset the claimant's investment-backed economic expectations by altering its rights as to a constitutionally protected property interest." *1256 Hertel Ave. Assocs.,* 761 F.3d at 265–66. A claimant's reasonable investment-backed economic expectations must be viewed in light of the "bundle of rights" associated with the property.

Ohio law has provided for a Homestead Exemption for over 160 years. *See Regan v. Zeeb,* 28 Ohio St. 483 (1876) (comparing the original homestead act of 1850, which exempted the homestead of families from forced sale to pay debts, to subsequent amendments to the act). Thus, Ohio's Homestead Exemption has become a "'background principle of the State's law of property' that serves both to define the scope of a judgment lienholder's property interest and its reasonable investment-backed expectations." *1256 Hertel Ave. Assocs.,* 761 F.3d at 266 (quoting *Lucas,* 505 U.S. at 1029, 112 S.Ct. 2886). "[T]he property owner [should] necessarily expect[ ] the uses of his property to be restricted, from time to time, by various measures newly enacted by the State in legitimate exercise of its police powers; 'as long recognized, some values are enjoyed under an implied limitation and must yield to the police power.'" *Lucas,* 505 U.S. at 1027, 112 S.Ct. 2886 (quoting *Pa. Coal Co. v. Mahon,* 260 U.S. 393, 413, 43 S.Ct. 158, 67 L.Ed. 322 (1922)). Accordingly, when Creditor obtained the Judgment Lien in 2006, inherent in the bundle of rights acquired by Creditor, was the implied limitation that collection on the judgment may be impeded by future amendments to Ohio's Homestead Exemption.

Perhaps recognizing such an implied limitation, Creditor seemingly concedes that the 2008 Amendment does not violate the Takings Clause. *See* Suppl. Br. in Further Supp. of Obj. of Creditor Kenny Centre, LLC to Claimed Exemption, 14 (Doc. 14). Creditor notes that, prior to the 2008 Amendment, the Homestead Exemption amount was $5,000.00 and had been for decades. Thus, because it is reasonable to expect that state legislatures will occasionally amend exemptions to reflect changes in the economic climate, Creditor admits that it cannot "assert that it could not reasonably expect a homestead exemp-

tion increase [to $20,200.00] sometime soon after it attached its lien." *Id.* Creditor contends, however, that it could not expect an increase of the Homestead Exemption from $20,200.00 to $125,000.00 a mere five (5) years after the previous increase. But, because the State of Ohio has, throughout history, regulated the judgment debtor and judgment creditor relationship, even a drastic change in regulation—such as the Homestead Exemption increase promulgated by the 2013 Amendment—is inherent in the bundle of rights associated with judgment liens. The 2013 Amendment therefore does not give rise to a taking. *See Andrus v. Allard,* 444 U.S. 51, 65–68, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979) (holding that a total prohibition on the sale of eagle feathers was not a taking even though the restriction denied certain commercial traders the right to sell property acquired prior to the enactment of the restriction); *Lucas,* 505 U.S. at 1027–28, 112 S.Ct. 2886 (citing *Allard* for the proposition that *"by reason of [a] [s]tate's traditionally high degree of control* over commercial dealings," in the case of personal property, a property owner should be aware that a new regulation may render the property interest worthless (emphasis added)).

Additionally, although Creditor does not challenge the applicability of 11 U.S.C. § 522(f) to this matter under the Takings Clause, the Court will briefly address the issue for the sake of completeness. It is noteworthy that, while neither of the Amendments result in the eradication of Creditor's lien rights—the Amendments merely potentially limit the future collectability of the judgment secured by the Judgment Lien and thus may devalue the Judgment Lien—the application of § 522(f) results in the destruction of all or part of Creditor's property interest.

In *United States v. Security Industry Bank,* 459 U.S. 70, 103 S.Ct. 407, 74

L.Ed.2d 235 (1982), the Supreme Court addressed whether § 522(f)(2) could be used to avoid nonpossessory, nonpurchase-money security interests that were created prior to the enactment of the Bankruptcy Reform Act of 1978 (the "1978 Act"). Prior to the 1978 Act, such security interests were not avoidable in bankruptcy proceedings. On principles of statutory construction, the Supreme Court ultimately held that, because Congress did not explicitly state that § 522(f) applied to security interests created prior to the 1978 Act, the interests could not be avoided. *Id.* at 81, 103 S.Ct. 407. Although not the basis for its decision, the Supreme Court expressed "substantial doubt" that the use of § 522(f)(2) to avoid pre–1978 Act liens comported with the Fifth Amendment. *Id.* at 78, 103 S.Ct. 407.

Since *Security Industry Bank,* most courts that have addressed the constitutionality of § 522(f) have held that avoidance of a lien created after the enactment of the 1978 Act does not violate the Takings Clause. *See, e.g., Webber v. Credthrift of America, Inc. (In re Webber),* 674 F.2d 796, 804 (9th Cir.1982) (holding that a lien created after the enactment of the 1978 Act, but before the effective date of the act, could nonetheless be avoided pursuant to 11 U.S.C. § 522(f)); *United States v. Household Finance Co. (In re Groves),* 707 F.2d 451, 452 (10th Cir. 1983) (same). Further, several courts have addressed an issue similar to that in instant case: whether the application of § 522(f) to avoid a lien was a violation of Takings Clause, if such lien was created after the enactment of the 1978 Act but prior to an increase in the applicable homestead exemption. The majority of the courts have answered in the negative. *See Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677, 686 (1st Cir.1999) (holding that the creditor's property rights in the lien are circumscribed by the debtor's ability to avoid the lien under § 522(f), and the prospective application of § 522(f) does not result in a taking); *In re Strandberg,* 253 B.R. 584, 588 (Bankr.D.R.I 2000) (finding that it is § 522(f), not the state exemption statute, that affects the creditor's lien rights, and therefore, if a judicial lien comes into being after the enactment of § 522(f), avoidance of a lien does not constitute a taking); *In re Betz,* 273 B.R. 313, 326 (Bankr.D.Mass.2002) ("When [the creditor's] lien arose, *he knew or should have known that, in the event of the Debtors' bankruptcy, § 522(f) might impact upon his lien and that the underlying state court exemptions might be adjusted depending upon the date of the filing of the bankruptcy case.*" (emphasis added)).

In summary, because Creditor failed to provide evidence regarding the amount of Debtor's equity in the Property at the time each Amendment was enacted, the Court is unable to determine the extent of any economic impact suffered by Creditor as a result of the enactment of either Amendment. However, even if the Amendments had an adverse economic impact on Creditor's interest, such impact could not upset Creditor's reasonable investment-backed expectations because, with the Judgment Lien, came the implied limitation that the Homestead Exemption may increase and that Debtor may use any increased Homestead Exemption to avoid the Judgment Lien in a future bankruptcy proceeding. Therefore, the Court finds that neither the 2008 Amendment nor the 2013 Amendment resulted in a "taking" under the United States or Ohio Constitution.

ii. *Even if the Amendments could be construed to implicate the Takings Clause of the Ohio Constitution, 11 U.S.C. § 522 preempts any restriction on applicability of the 2013 Amendment.*

As discussed in section III(B)(iii) above, § 522 of the Bankruptcy Code dictates

that the applicable exemption in determining whether a particular lien on property is avoidable under § 522(f), is the exemption a debtor could claim under § 522(b), if there were no liens on the property. 11 U.S.C. § 522(b), (f). In the instant case, that exemption is the 2013 Amendment. Thus, any state law limitation, constitutional or otherwise, on the application of the 2013 Amendment to this matter is preempted by the Bankruptcy Code.

## IV. Conclusion

For the foregoing reasons, the Court concludes that neither the United States Constitution nor the Ohio Constitution restrict Debtor's use the 2013 Amendment in an action to avoid Creditor's Judgment Lien under § 522(f) of the Bankruptcy Code. Therefore, the Judgment Lien fully impairs the exemption to which Debtor would be entitled under § 522(b), and it is avoidable in its entirety. The Court will enter a separate order on Debtor's Motion in accordance with this opinion.

**IT IS SO ORDERED.**