**In re Karen June JENNINGS, Debtor.**

**No. 02–69588–FRA13.**

United States Bankruptcy Court,
D. Oregon.

Jan. 8, 2004.

Rick Harder, Eugene, OR, for Debtor.

Edward E. Hill, David Mills, Eugene, OR, for Creditor.

## MEMORANDUM OPINION

FRANK R. ALLEY, III, Bankruptcy Judge.

Debtor objects to the assertion of her former husband that his claim, based on the judgment dissolving their marriage, is entitled to priority. The matter was heard on December 11, 2003, at which time both parties presented testimony and other evidence. After reviewing the record, I conclude that the claim is not entitled to priority, and that the objection should be sustained.

## I. BACKGROUND

The marriage of Debtor Karen Jennings and Claimant Patrick B. Murray was dissolved by a judgment of the Circuit Court for Lane County, Oregon filed on January 8, 2001. They had been married for three years. There were no children of this marriage, although each party had at least one child from a former marriage. At the time of the dissolution, Claimant's annual income was about twice that of the Debtor.

In the course of the dissolution proceeding, the parties executed a Marital Settle-

ment Agreement ("MSA"), dated November 3, 2000. As no matter before the Circuit Court was contested, the MSA and a form of judgment were presented *ex parte* to a judge of the Circuit Court. The MSA was incorporated into the judgment pursuant to ORS 107.104 and 107.105. The judgment directs each party to "perform each and every covenant" of the agreement.

At issue here are two provisions of the MSA:

> ¶ 1:**SPOUSAL SUPPORT AND INHERITANCE.** Each party waives any spousal support or inheritance rights that [sic] party might have against the other party.
>
> \* \* \* \* \* \*
>
> ¶ 7 **DEBTS.** Husband and wife shall assume as their sole and separate obligation [sic], holding the other harmless therefrom, any and all debts incurred by that party after the separation on October 7, 2000.
>
> 7.1 Wife agrees to pay and hold Husband harmless from the following obligations in the approximate amount as noted:
>
> ATT Platinum, approximate balance ....... $14,000.00
> 1 USA, approximate balance ............. $16,000.00
>
> 7.2 Husband agrees to pay and hold Wife harmless from the following obligations in the approximate amounts as noted:
>
> MBNA, approximate balance ............. $15,000.00
> [real property taxes on residence retained
> by debtor] ......................... unknown
>
> 7.3 **Obligation is non-Dischargeable.** The obligation of each party to hold the other harmless from the debts and obligations specified in this paragraph shall be deemed to be in the nature of support and shall not be dis-

chargeable in bankruptcy by the other party.

Debtor did not pay all of the obligations specified in the MSA. She filed her petition for relief under Chapter 7 of the Bankruptcy Code on December 12, 2002 showing both AT & T and First USA Bank as creditors. On June 1, 2003, Debtor moved to convert the plan to one under Chapter 13, and submitted a plan of reorganization providing for payments to the trustee of $125.00 per month for 36 months. The estimated dividend to unsecured, non-priority creditors was 2% of such creditors' allowed claims. The only objection to confirmation was filed by the trustee. These objections were resolved between the trustee and Debtor, and an order confirming the plan was entered on September 23, 2003.[1]

Claimant filed Claim # 3 on September 25. The claim seeks payment of $30,000, based on the Judgment of Dissolution and MSA, and asserts that the claim is subject to priority as support owed to a former spouse. 11 U.S.C. § 507(a)(7). Debtor objects to the claim of priority, but not the amount owed. (Doc. # 26)

## II. DISCUSSION

### 1. *Priority Claims in Chapter 13 Cases*

Code § 507(a) sets out the priority of certain types of claim. In particular, § 507(a)(7) extends priority treatment to

> [A]llowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record,

---

1. Claimant did file an objection on September 26, after the order was entered, and after the time required by court order for filing objections. The Court has elected to treat the objection as a motion for revocation of confirmation. At the parties' request, that matter was set for hearing after the claim objection is decided.

determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt–

$\quad$ * $\qquad$ * $\qquad$ * $\qquad$ * $\qquad$ * $\qquad$ *

(B) includes a liability designated as alimony, maintenance or support, unless such liability is actually in the nature of alimony, maintenance or support.

In chapter 13 cases, the plan must provide for payment in full of priority claims. 11 U.S.C. § 1322(a)(2). If the claim described here is allowed as a priority claim, payments under the plan as confirmed will not be sufficient. The debtor will be required either to contribute substantially higher plan payments, or reconvert the case to one under chapter 7.

2. *Effect of Marital Settlement Agreement and Judgment of Dissolution*

Claimant's position is that the MSA and the Judgment incorporating it made a determination that the obligation set out in ¶ 7 of the MSA was "in the nature of support." The determination of the Circuit Court is, Claimant argues, binding on the parties and this Court. Debtor argues that the obligation is not, in fact, in the nature of support, and not entitled to priority treatment. The Claimant's arguments fail because neither the Circuit Court nor the parties have the power to establish the priority of the claim in advance of any bankruptcy proceeding.

■ A. *The Circuit Court had no jurisdiction to determine priority.* Core areas of bankruptcy and bankruptcy procedure are within the exclusive jurisdiction of the bankruptcy courts. *In re Gruntz,* 202 F.3d 1074 (9th Cir.2000) (Automatic Stay), *In re Dunbar,* 245 F.3d 1058 (9th Cir.2001) (Automatic Stay), *In re McGhan,* 288 F.3d 1172 (9th Cir.2002) (Discharge). In each of these cases, the Court of Ap-

peals has upheld the principle that "state courts should not intrude upon the plenary power of the federal courts in administering bankruptcy cases by attempting to modify or extinguish federal court orders *such as* the automatic stay." *In re McGhan,* 288 F.3d at 1179 (quoting from *Gruntz,* 202 F.3d at 1088 (emphasis in original)). The *McGhan* court goes on to state that the state court lacked authority to modify or dissolve a discharge injunction by finding that a particular claim was not discharged due to lack of notice to the claimant of the commencement of the bankruptcy proceeding.

■ The priority of claims set out in Code § 507 is a core bankruptcy matter, as much as are administration of the automatic stay and allowance or discharge of claims. Since the federal courts have exclusive jurisdiction to determine the priority of claims, a state court judgment purporting to establish priority is not binding, and is subject to collateral attack in federal court. *See Gruntz,* 202 F.3d at 1079–1080.

■ B. *Settlement provisions waiving discharge are unenforceable.* As a matter of public policy, an agreement in advance of a bankruptcy case that a particular claim is not subject to discharge is not enforceable. *In re Huang,* 275 F.3d 1173, 1176 (9th Cir.2002), *Hayhoe v. Cole,* 226 B.R. 647, 651–54 (9th Cir. BAP 1988). The Court of Appeals observed in *Huang* that "This prohibition of prepetition waiver has to be the law; otherwise astute creditors would routinely require their debtors to waive." The logic of these cases applies with particular force in the context of assignment of priority. If creditors were permitted to insist in advance on priority treatment of their claims, the priority scheme mandated by the Bankruptcy Code would founder. Worse, the agreement

does more than enhance the condition of a particular claimant, but also shoulders aside the claims of others, with no opportunity to be heard. The MSA cannot be enforced to the extent it attempts predetermination of the priority of the claim.[2]

### 3. *The Claim Is Not in the Nature of Support*

■ It remains to be determined, without resort to the MSA or Judgment, whether the claim is entitled to priority. Although the question of whether a claim is in the nature of support for purposes of Code § 507(a)(7) is strictly a matter of federal law, *In re Williams,* 703 F.2d 1055 (8th Cir.1983), federal courts look to state law and the intent of the parties to inform their analysis. *In re Seixas,* 239 B.R. 398, 404 (9th Cir. BAP 1999)(citing *Shaver v. Shaver,* 736 F.2d 1314, 1316 (9th Cir. 1984)). The Claimant has the burden of proving, by a preponderance of the evidence, that the claim is entitled to priority. *See In re Prickett,* 2000 WL 33712200 (Bankr.D.Idaho 2000)(citing *In re Holm,* 931 F.2d 620, 623 (9th Cir.1991)).

In a contested dissolution proceeding, a state court takes a number of factors into consideration in determining whether to award spousal support, including duration of the marriage and income of the parties:

> In determining the amount and duration of spousal support, ORS 107.105(1)(d)(C) provides that [the state court] may consider, among other things, the duration of the marriage, the age and health of the parties, the standard of living established during the marriage, the relative income and earning capacities of the parties, the parties' training, employment skills and work experience, and '[a]ny other factors the court deems just

and equitable.' ORS 107.105(1)(d)(C). The purpose of the award is "not to eliminate all disparities in the parties' incomes or to enable one party to look indefinitely to the other for support, if self-support at a reasonable level is or will be possible." *See [In re Marriage of] Ley and Ley,* 133 Or.App. 138, 141, 890 P.2d 440 (1995).

*Matter of Marriage of Suzanne Marie Roppe and Randall Albert Roppe,* 186 Or. App. 632, 636, 64 P.3d 1145, 1146 (2003).

An Oregon court would not have required the Debtor to make support payments to the Claimant had the dissolution been contested, given the facts of this case. At the time the parties' marriage of barely three years ended, Claimant's income was far greater, and more regular, that the Debtor's. No other factors considered by the state court were, on the record before me, present at the time of the parties' dissolution of marriage which would lead the court to order the Debtor to provide support to Claimant.

As to the parties' intent, the only clear expression in the agreement is that they did not intend for either to pay or receive spousal support. What was intended was that the obligation to indemnify each other against certain obligations not be discharged in bankruptcy. As seen, this they cannot do.

The Claimant argues that payment of the credit card debt—which, presumably, both parties owe jointly—is necessary for his support, because non-payment by the Debtor adversely affects his access to credit. However, this adverse effect was likely to occur in any event. The MSA did not impose any deadline for payment, and the parties contemplated that payment in

---

**2.** Note that state law precludes enforcement of a marital settlement agreement which con-

travenes public policy. ORS 107.104(1)(B)

full could take up to five years. The mere fact that Debtor's failure to pay would result in pressure from the parties' mutual creditors does not mean that the payment obligation is in the nature of support. Every unpaid obligation brings with it a measure of economic distress. If this distress alone were sufficient to make the obligation one of support, then virtually all claims between former spouses might qualify. This was not Congress's intent. The language of 11 U.S.C. § 507(a)(7) clearly limits priority to payments which are, in fact, needed for support. The record in this case does not sustain a finding that the claim so qualifies.

Claimant relies on an unpublished opinion of the District Court for the proposition that the Bankruptcy Court should not look beyond the clearly expressed intention of the state court. *In re Peter*, Dist. Court No. 02–6295–AA (D.Or.2002). Whether an opinion of a District Court judge is binding in subsequent cases is subject to some debate. *See In re Barakat*, 173 B.R. 672 (Bankr.C.D.Cal.1994). Whatever the general principle, *Peter* should not be applied here, for a number of reasons: First, Circuit Court authority appears to be clearly to the contrary.[3] This Court may consider the intent of the parties or the court below, but is not bound by either. Moreover, *Peter* involved a contested *pendente lite* order, while the case at bar involves ratification of a settlement agreement containing unlawful terms. Given the prohibition of clauses waiving bankruptcy rights, and the statutory command not to enforce such provisions, the State court cannot be said to have intended paragraph 7 of the MSA to be effective.

**3.** A review of the record in the *Peter* case reveals that the holdings of the Court of Ap-

## III. CONCLUSION

The provision of the Marital Settlement Agreement characterizing Debtor's obligation to Claimant as "in the nature of support" is unenforceable. Claimant has not demonstrated that the obligation is in fact in the nature of support. Accordingly, the Debtor's objection to the claim will be sustained.

This opinion sets out the Court's findings of fact and conclusions of law. An order shall be entered allowing Mr. Murray an unsecured, non-priority claim in the amount of $30,000.

peals in *Gruntz* and subsequent cases were not raised before the District Court.