**IN RE Jennifer Lynn HELLIGRATH, Debtor**

**Case No. 17–10081**

United States Bankruptcy Court, S.D. Ohio, Western Division.

Signed June 12, 2017

John A. Schuh, Cincinnati, OH, for Debtor.

## MEMORANDUM DECISION REGARDING LEGAL ISSUES RELATED TO CONFIRMATION

Beth A. Buchanan, United States Bankruptcy Judge

In their joint *Identification of Legal Issues to be Briefed in Conjunction with Receiver's Objections to Confirmation* [Docket Number 97], the parties identified certain threshold legal issues, related to New Growth Advisors Inc.'s *Objection to Confirmation* [Docket Number 86], which have been thoroughly briefed and argued before this Court. *See* Docket Numbers 104, 106, 109, 110, and 111. The legal issues identified by the parties are as follows:

1. Whether (a) all of the Receiver's Claim (No. 16), both for pre-petition and post-petition services, is secured by a perfected judicial lien by virtue of the state court's Order Appointing Receiver or by other applicable law, and if so, (b) such judicial lien attaches to the Property (as defined in the Order Appointing Receiver);

2. Whether the priority of the "fees, costs and expenses incurred by the Receiver, including professional fees incurred by the Receiver[,]" set forth in Para. 22 of the Order Appointing Receiver is entitled to preclusive effect by the Court, or can the Court modify such treatment without the consent of the Receiver; and

3. Whether 11 U.S.C. sec. 1326(b)(1) requires the payment of the entire unpaid amount of the allowed administrative expense claim of the Receiver before or at the time of the first payment to creditors under the Plan, or may the Court approve a Plan which provides for the disbursement of payments, whether by the Trustee, Debtor, or otherwise under the Plan, to other creditors before the

allowed administrative expense claim of the Receiver is paid in full.

[Docket Number 97].

After careful review of the parties' arguments, this Court concludes that: (i) the Receiver's claim is not perfected by a judicial lien; (ii) the Bankruptcy Code,[1] rather than the Receivership Order's priority scheme, provides the exclusive system for determining priority of claims in a bankruptcy case; and, (iii) Bankruptcy Code Section 1326(b)(1) permits concurrent monthly payments of any allowed administrative expense claim in favor of the Receiver together with monthly adequate protection payments to MainSource before making payments on any other claims.

## I. Background

On August 16, 2016, Creditor MainSource Bank ("MainSource") filed a state court complaint initiating a foreclosure action against Debtor Jennifer Lynn Helligrath ("Debtor") and other defendants on certain promissory notes in *MainSource Bank v. Helligrath, et al.*, Hamilton County, Ohio Court of Common Pleas Case No. A1604576 (the "Foreclosure Proceeding"). MainSource requested the appointment of a receiver, specifically New Growth Advisors, Inc. (the "Receiver") [Docket Number 97, Ex. B] and on August 31, 2016, Judge Dinkelacker entered an *Order Appointing Receiver* ("Receivership Order") in the Foreclosure Proceeding [*Id.*, Ex. A]. Pursuant to the Receivership Order, the Receiver took possession and began operating the nine (9) parcels of real property securing the promissory notes that are more fully described in the Receivership Order (the "Property") [*Id.*, Ex. A pp.1–2]. The Receiver asserts that it entered a contract to sell the Property in December of 2016 and that its sale motion was set to be heard in the Foreclosure Proceeding on January 12, 2017.

On January 11, 2017, the Debtor filed her Chapter 13 bankruptcy petition. MainSource initially opposed the Debtor's use of its cash collateral [Docket Number 55] as well as the turnover of the Property to the Debtor [Docket Number 13]. Both matters were subsequently resolved by the agreement of the parties. MainSource was granted adequate protection for the Debtor's use of its cash collateral as set forth in the *Agreed Order on Motion of Debtor for Orders Authorizing Use of Cash Collateral* [Docket Number 77] (the "Cash Collateral Order"), the terms of which were incorporated into the Debtor's proposed plan [Docket Number 122] (the "Plan"). MainSource and the Receiver also agreed to turn over possession of the Property to the Debtor, in accordance with the *Order on Motion of Creditor MainSource Bank for an Order Excusing the Turnover Requirement of Section 543* entered by this Court on March 2, 2017 [Docket Number 76].

The Receiver subsequently filed a proof of claim for $70,512.43, purportedly secured by a judicial lien on the Property and/or entitled to priority as an administrative expense pursuant to Bankruptcy Code Section 507(a)(2) [Proof of Claim Number 16–1]. The Receiver also filed its administrative expense request [Docket Number 84] and an objection to confirmation of the Debtor's Chapter 13 plan [Docket Number 86].

Relevant to the threshold issues and particularly the status of the Receiver as the holder of a judicial lien or administrative expense claim, is the Receivership Order's provisions explaining how the Receiver is to be paid for its fees and expenses. First, in Paragraph 12, Judge Dinkelacker

---

1. Unless otherwise indicated, the terms "Bankruptcy Code," "Section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*

provides that the Receiver may borrow money from MainSource in the amounts necessary to carry out the Receiver's duties [*Id.*, ¶ 12]. Any amounts so advanced by MainSource to the Receiver "shall be secured by a first and best lien on the Property" [*Id.*]. However, the Receiver focuses on another paragraph of the Receivership Order that provides for how the Receiver would be paid out of the sale of the receivership property. Specifically, Paragraph 22 provides:

> 22. Receipts received from operation or sale of the Property by the Receiver shall be applied in the following order of priority after payment of expenses associated with the Property:
>
> (a) to payment and reimbursement of the Receiver for all fees, costs and expenses incurred by the Receiver, including professional fees incurred by the Receiver;
>
> (b) to payment of authorized insurance premiums;
>
> (c) to payment of the Receiver's delegates of any management fees for managing real estate of the type involved;
>
> (d) to payment of the Obligations to Plaintiff; and
>
> (e) the balance, if any, shall be held or disbursed as ordered by the Court.

[*Id.*, ¶ 22].

## II. Legal Analysis

### A. The Receiver's Claim Is Not Secured By A Judicial Lien

The Receiver asserts that its claim is secured by a judicial lien because the Receivership Order is a final appealable order in the nature of a judgment that grants a "charge" against the Property in favor of the Receiver that fits under the broad definition of a "lien" found in the Bankruptcy Code. The Receiver further relies on a relatively new receivership statute enacted in Ohio and Ohio case law to support that a receiver's fees and expenses are generally paid out of the assets of the receivership. While this Court agrees that a receiver is generally paid out of the receivership corpus, neither the Receivership Order, nor the Ohio receivership statute and case law cited by the Receiver, provides it with a judicial lien on the Property of the receivership.

■ The Receiver correctly notes that the Bankruptcy Code provides a broad definition of a "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). The Bankruptcy Code further defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). While what constitutes a "lien" may be broadly worded in the Bankruptcy Code, bankruptcy courts must still look to state law to determine whether a creditor has acquired a lien and to what property that lien attaches. *Butner v. United States*, 440 U.S. 48, 55–57, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law."); *In re Argubright*, 532 B.R. 888, 896 (Bankr. W.D. Tex. 2015) (nature, extent and duration of a judicial lien determined under state law); *International Brotherhood of Teamsters v. Kitty Hawk International, Inc. (In re Kitty Hawk, Inc.)*, 255 B.R. 428, 439 (Bankr. N.D. Tex. 2000) (nature of creditor's claim is determined under state law but priorities are determined by reference to the Bankruptcy Code); *Quadrel Leasing de Puerto Rico, Inc. v. Carols A. Rivera, Inc. (In re Carols A. Rivera, Inc.)*, 130 B.R. 377, 379 (Bankr. D. P.R. 1991).

■ Under Ohio law, a judgment, standing alone, does not give rise to a lien or security interest. *French v. State Farm*

*Mutual Auto. Ins. Co. (In re LaRotonda)*, 436 B.R. 491, 497 (Bankr. N.D. Ohio 2010). Although liens can be created in other ways, a judicial or judgment lien is generally created by filing a certificate of judgment in accordance with Ohio Revised Code Section 2329.02. *In re Davis*, 539 B.R. 334, 341 (Bankr. S.D. Ohio 2015). Upon filing the certificate of judgment in a specific county, the lien then attaches to all real property owned by the judgment debtor in that county. Ohio Rev. Code § 2329.02; *Davis*, 539 B.R. at 341.

■ Assuming, for purposes of this matter, that the Receivership Order is in the nature of a judgment in favor of the Receiver, the Receiver did not file a certificate of judgment in accordance with Ohio Revised Code Section 2329.02. Instead, the Receiver argues that its judicial lien is simply created by the Receivership Order's language at Paragraph 22, which provides:

22. Receipts received from operation or sale of the Property by the Receiver shall be applied in the following order of priority after payment of expenses associated with the Property:

(a) to payment and reimbursement of the Receiver for all fees, costs and expenses incurred by the Receiver, including professional fees incurred by the Receiver;

(b) to payment of authorized insurance premiums;

(c) to payment of the Receiver's delegates of any management fees for managing real estate of the type involved;

(d) to payment of the Obligations to Plaintiff; and

(e) the balance, if any, shall be held or disbursed as ordered by the Court. [Docket Number 97, Ex. A, ¶ 22]. The Receiver asserts that this language creates a "charge" or judicial lien against the receivership property. This Court disagrees.

Notably, Paragraph 22 of the Receivership Order omits words like "lien," "charge," or any other language that could be interpreted as providing the Receiver with an interest in the receivership property. The omission is significant because the Receivership Order does include explicit lien-creating language in another provision. Specifically, Paragraph 12 of the Receivership Order provides MainSource with a "first and best lien on the Property" for funds advanced to the Receiver [*Id.* at ¶ 12]. The omission of this same lien-creating language in Paragraph 22 of the Receivership Order leads to the conclusion that no lien is created for the Receiver's fees and expenses in this provision. Instead, Paragraph 22 creates a priority scheme for payment of certain expenses and obligations out of the Property's sale proceeds listing the Receiver's fees and expenses among others to be paid, including insurance premiums.[2] This Court concludes that the priority scheme in Paragraph 22 of the Receivership Order does not, in and of itself, create a judicial lien or charge against the Property in favor of the Receiver.

■ Nonetheless, the Receiver further cites Ohio statutory provisions governing receiverships to support that it holds a judicial lien. The Receiver focuses on Ohio Revised Code Section 2735.04(C), effective March 23, 2015, providing that: "[a]ny funds that are expended by or on behalf of the receiver, including receivership fees ... shall be taxed as court costs or other-

---

**2.** As will be made clear in the next section of this Memorandum Decision, the Bankruptcy Code, rather than the Receivership Order's priority scheme, provides the exclusive system for determining priority of claims in a bankruptcy case.

wise treated as an administrative expense of the action." Ohio Rev. Code § 2735.04(C). While this statute provides for the payment of a receiver's expenses as court costs or an administrative expense of the receivership proceeding, the statute contains no language providing the receiver with a lien against, interest in, or charge against receivership property. Again, this omission is significant given that the Ohio legislature has used statutory language explicitly creating a lien in favor of a receiver in other contexts.

As an example, Ohio Revised Code Section 3767.41, effective October 16, 2009, provides for the appointment of a receiver in the context of a nuisance property. Section 3767.41(H)(2)(b) states that an appointed receiver's expenses and fees approved by the state court "are a first lien upon the building involved and the property on which it is located and are superior to all prior and subsequent liens or other encumbrances associated with the building or the property ...." Ohio Rev. Code § 3767.41(H)(2)(b). This nuisance statute was enacted more than five years before the Ohio receivership statute relied on by the Receiver. Had the Ohio legislature intended to create a lien in favor of the Receiver for its fees and expenses within Ohio Revised Code Section 2735.04, it could have used the same or similar-lien creating language used in Ohio Revised Code Section 3767.41. The complete omission of this type of language leads this Court to conclude that Ohio Revised Code Section 2735.04 creates no lien in favor of the Receiver, whether the statute is read alone or in conjunction with the Receivership Order. *See In re Tudor*, 342 B.R. 540, 553–554 (Bankr. S.D. Ohio 2005) (when a statute is plain and unambiguous, it should be applied as written); *State v. Hurd*, 89 Ohio St.3d 616, 734 N.E.2d 365, 366 (2000) ("When a statute is plain and unambiguous

... there is no occasion for resorting to rules of statutory interpretation.").

Finally, the Receiver relies on Ohio case law for the proposition that the fees and expenses of a receiver "generally are satisfied from the assets under receivership." *Sobin v. Lim*, 21 N.E.3d 344, 353 (Ohio Ct. App. 2014); *see also Brown v. Winterbottom*, 98 Ohio St. 127, 120 N.E. 292, 294–95 (1918). This Court has no disagreement with this general proposition. However, this proposition, alone, does not create a lien, but only an expectation of how a receiver is normally paid in a state court proceeding involving a receivership. While courts have suggested that a receiver's expenses and losses should be made a charge against the receivership corpus to protect payment to the receiver, *see, e.g., Richey v. Brett*, 112 Ohio St. 582, 148 N.E. 92, 94 (Ohio 1925), explicit lien-creating language is necessary to provide a receiver with a charge or lien against receivership property that would arise to the level of a property interest. No such explicit language is found in the Receivership Order at issue in this case.

For all of these reasons, this Court concludes that the Receiver does not hold a judicial lien arising from the Receivership Order or the Ohio statutes and case law cited by the Receiver.

**B. Federal Bankruptcy Law Governs the Priority For The Distribution Of Claims In Bankruptcy; The Priority Of Distribution In The Receivership Order Is Not Entitled to Preclusive Effect.**

The Receiver asserts that Paragraph 22 of the Receivership Order establishes the priority of the Receiver's claim and that the Receivership Order is entitled to preclusive effect under the Full Faith

and Credit Act.[3] The Receiver maintains that "Judge Dinkelacker clearly and unequivocally ordered that the Receiver's fees and expenses be paid first from the Property" and that order must be given preclusive effect [Docket Number 111, p. 5] (emphasis in original).

While the Receivership Order sets the priority scheme of payments within the state Foreclosure Proceeding, it has no bearing in bankruptcy court. In bankruptcy, priority of claims is determined by Bankruptcy Code Section 507 making whether a particular claim is entitled to priority treatment a question of federal law. 11 U.S.C. § 507; *Int'l Bd. of Teamsters AFLCIO v. Kitty Hawk Int'l Inc. (In re Kitty Hawk Inc.)*, 255 B.R. 428, 439 (Bankr. N.D. Tex. 2000) ("Although the nature of a creditor's claim is determined under state law, the Code establishes the priorities of claims.); *Rosetta Stone Commc'n, LLC v. Gordon (In re Chambers)*, 500 B.R. 221, 228 (Bankr. N.D. Ga. 2013) ("the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among creditors in the prescribed order of priority as Congress has legislated" according to Section 507 of the Bankruptcy Code.); *In re Jennings*, 306 B.R. 672, 675 (Bankr. D. Or. 2004); 8B C.J.S. *Bankruptcy* § 992. As such, "a state court judgment purporting to establish priority is not binding, and is subject to collateral attack in federal court." *Jennings*, 306 B.R. at 675.

■ Even if the concept of preclusion did apply in this case, the Receiver's position fails. Under Ohio law, the doctrine of issue preclusion has four elements:

1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment; 3) The issue in the present suit must have been identical to the issue in the prior suit; 4) The party against whom estoppel is sought was a party or in privity with the party to the prior action.

*Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (6th Cir. BAP 2002) (citations omitted). The Receiver, as the party seeking to invoke the doctrine of issue preclusion, has the burden of establishing its applicability. *See Simmons Capital Advisors, Ltd. v. Bachinski (In re Bachinski)*, 393 B.R. 522, 535 (Bankr. S.D. Ohio 2008).

■ While the Debtor and the Receiver focus on whether the priority of the Receiver's right to payment was "necessary to the final judgment," this Court is not convinced that the "issue" in the receivership proceeding is identical to the "issue" in this bankruptcy proceeding.

■ Under Ohio law, the test used to determine the identity of issues involves a consideration of the evidence presented in support of each:

If the same facts or evidence would sustain both, the two actions are considered the same within the rule that the judgment in the former is a bar to the subsequent action. If, however, the two actions rest upon different facts, or if different proofs would be required to sustain the two actions, a judgment in

---

**3.** The Receiver cites one case in support of its position—*Gemini Services Inc. v. Mortgage Electronic Registration Systems (In re Gemini Services)*, 350 B.R. 74 (Bankr. S.D. Ohio 2006). In a parenthetical to that citation, the Receiver quotes *Gemini Services* for the proposition that a bankruptcy court "would be obligated to follow a state court judgment explicitly concluding the [lien] … as the first and best lien[.]" *Id.* at 78–79. As previously discussed, this Court concludes that the Receivership Order did not create a lien in favor of the Receiver.

one is no bar to the maintenance of the other.

*Ed Schory & Sons, Inc. v. Francis (In re Francis)*, 226 B.R. 385, 389 (6th Cir. BAP 1998) (internal citations omitted)).

The parties appear to frame the "issue" as the order in which claims are to be paid. Paragraph 22 of the Receivership Order sets forth the order in which "[r]eceipts received from operation or sale of the Property by the Receiver shall be applied." There are no factual finding in the Receivership Order to support the distribution scheme set forth in that order. That alone should be sufficient to find that issue preclusion does not apply in this case. *See NCM Enterprises Sand and Stone, Ltd. v. Earnest (In re Earnest)*, 2013 Bankr. LEXIS 819, at *13-14, 2013 WL 795399, at *5 (Bankr. N.D. Ohio Mar. 1, 2013) ("The state-court judgment, however, lacking any specific findings of fact and using only boilerplate language, leaves this Court with nothing from which to assess the basis for the state court's decision. Therefore, within its four corners, the state-court judgment provides no basis from which it can be concluded that the court actually passed upon and determined any issue that could be equated with the [action in this bankruptcy proceeding].")

Regardless, the facts or evidence that the state court would have considered in determining the priority for the payment of claims in the receivership proceeding clearly are not the same as the facts or evidence a bankruptcy court considers when determining the priority for the payment of claims in a bankruptcy proceeding. In a receivership proceeding, the state court is only concerned with the property at issue and those parties who are entitled to payment from that property. In bankruptcy, however, the court is concerned with the ratable distribution to all creditors from the debtor's income and/or property in the manner prescribed by the Bankruptcy Code. These are fundamentally different considerations. As the bankruptcy court stated in *In re Sevitski*:

> [T]he State court surely was not asked, as this Court is, to decide whether [the receiver] should be paid before other creditors from the limited assets of an estate which is not just in receivership but is terminally bankrupt. It is the duty of this Court, and none other, to determine whether or to what extent [the receiver] deserves to be paid out of the pockets of other, less deserving creditors.

161 B.R. 847, 854-55 (Bankr. N.D. Okla. 1993) (finding no preclusive effect to a state court award of fees and expenses to a receiver). Consequently, the Receivership Order is not entitled to preclusive effect.

 Finally, to the extent the Receiver relies on Ohio Revised Code Section 2735.04(c) to establish its priority "administrative expense" status, the statute is preempted by federal bankruptcy law. *See In re Kitty Hawk Inc.*, 255 B.R. at 439 ("Where a state statute would alter the priority of claims in a bankruptcy case, the state statute is pre-empted by the Code.").[4] Accordingly, neither the Receivership Order nor Ohio Revised Code Sec-

---

4. The issue of preemption was raised by MainSource in its response [Docket Number 109] to the Receiver's brief on the threshold issues. The scheduling order [Docket Number 100] required initial briefs on the threshold legal issues to be filed on or before April 7, 2017, with responsive briefs, if any, to be filed no later than April 14, 2017. MainSource filed a timely responsive brief to the Receiver's initial brief but did not file an initial brief. During oral argument, this Court gave the Receiver the opportunity to file a supplemental brief on the preemption argument raised by MainSource in its responsive brief. While counsel for the Receiver argued against preemption during oral argument, counsel indicated that the Receiver did not wish to supplement its briefs on this issue. As such, this

tion 2735.04(c) establishes a priority scheme for payment of the Receiver's expenses that has effect in this bankruptcy proceeding.

### C. Full Payment Of The Receiver's Allowed Administrative Expense Before Distributions Are Made To Other Creditors Is Not Mandated By Section 1326(b)(1).

As an alternative to its secured judicial lien argument, the Receiver asserts that it is entitled to an administrative expense claim pursuant to Sections 503(b)(3)(E) and 503(b)(4) of the Bankruptcy Code, which provisions grant administrative expense priority for the actual, necessary expenses incurred by a custodian whose services are superseded under Section 543 (such as the Receiver) plus reasonable compensation and reimbursement of expenses for the professionals retained by a custodian. The Receiver further maintains that its administrative expense claim must be paid in full before or at the time of the first payment to creditors under the Plan.

The Debtor, on the other hand, argues that the Receiver's asserted administrative claim may be paid over time, with such payments being distributed concurrently with the adequate protection payments that Debtor proposes to make directly to MainSource in her proposed Plan.

To resolve the issue presented by the parties, this Court must consider the interplay of the following provisions of the Bankruptcy Code:

Section 507(a)(2), which affords priority to "administrative expenses allowed under section 503(b);"

Section 1322(a)(2), which provides that a chapter 13 plan must "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 ... unless the holder of a particular claim agrees to a different treatment of such claim;"

Section 1325(a)(5)(B)(iii)(II), which requires as a condition to confirmation of a chapter 13 plan that a holder of a claim secured by personal property must receive payments in an amount "not less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan;" and,

Section 1326(b)(1), which provides that "[b]efore or at the time of each payment to creditors under the plan, there shall be paid ... any unpaid claim of the kind specified in section 507(a)(2)."

### 1. Any allowed administrative expense claim of the Receiver may be paid in deferred cash payments.

 Section 1322(a)(2) authorizes the payment of claims entitled to priority under Section 507 "in deferred cash payments." 11 U.S.C. § 1322(a)(2). As such, while a chapter 11 plan must provide for the payment of priority claims in full on the effective date of the plan unless the claimant agrees otherwise, 11 U.S.C. § 1129(a)(9)(A), a chapter 13 plan may provide for the payment of priority claims in "deferred cash installments under the general rules applicable to the payment of debts in a wage-earner plan." S.Rep.No. 95–1106, 95th Cong., 2d Sess. 34 (1978). Therefore, the Debtor is not required to provide for an immediate lump sum payment of the Receiver's asserted administrative expense claim in her Plan.

### 2. Any allowed administrative expense claim of the Receiver may be paid concurrently with the payment of MainSource's Section 1325(a)(5)(B)(iii)(II) claim.

 While Section 1322(a)(2) authorizes a debtor to pay priority claims in

Court finds that any argument that MainSource's brief was untimely has been waived.

installments, it does not address the order in which priority claims may be paid in relationship to other types of claims. As to this issue, the Receiver maintains that:

> Section 1326(b)(1) plainly means that at any given time after confirmation of a Chapter 13 plan, if there is any unpaid, allowed administrative expense, including any unpaid, allowed claim for attorney fees owing to a Debtor's attorney, no payment may be made to any other creditor under the plan unless the unpaid administrative expense is paid in full, either first or at the same time.

*In re Harris*, 304 B.R. 751, 757 (Bankr. E.D. Mich. 2004). The Receiver argues that " '[s]ection 1326 supplements the priorities provisions of section 507. Subsection (a) requires accrued costs of administrative and filing fees, as well as fees due to the Chapter 13 Trustee, to be disbursed before payments to the creditors under the plan.' " *In re Shorb*, 101 B.R. 185, 186–87 (9th Cir. BAP 1989) (quoting the legislative history to Section 1326). The Receiver's position in essence creates a heightened priority for administrative expense claims in chapter 13 cases, which requires payment in full of all administrative expense claims before other creditors—including secured creditors—may receive *any* payments under a chapter 13 plan.

The Debtor favors a different plain meaning reading of the statute. Under the Debtor's interpretation, Section 1326(b)(1) requires payment of administrative expense claims "before" payment of other claims only if the administrative expense claims have clear priority over all other claims. If a claim is entitled to equal or greater priority as the administrative expense claims, then the administrative expense claims may be paid "at the time of" the payment of the equal or greater priority claims. As applies to this case, the Debtor argues that any allowed administrative expense claim of the Receiver may be paid pursuant to Section 1326(b)(1) in deferred cash payments (*see* Section 1322(a)(2)), "at the time of" the adequate protection payments to MainSource (*see* Section 1325(a)(5)(B)(iii)(II)) until paid in full and "before" the payment of all other claims.

Based on the arguments advanced by the parties, this Court finds that the Debtor's position most closely harmonizes the statutory provisions at issue.

The Debtor correctly points out that the *Harris* case relied upon by the Receiver is a pre-BAPCPA case. This is significant because BAPCPA added Section 1325(a)(5)(B)(iii)(II), which codifies the right of the holder of an allowed claim secured by personal property to receive payments during the plan that are sufficient to provide adequate protection to the creditor's interest in the property. 8 Collier on Bankruptcy ¶ 1325.06(3)(b)(ii)(B) (Alan N. Resnick & Henry J Sommer, eds., 16th ed.).

In *Harris*, the court considered whether the administrative claim for the debtors' attorney fees should be paid prior to making payments on two claims secured by the debtors' vehicles. *In re Harris*, 304 B.R. at 753–54. The *Harris* court concluded that "§ 1326(b)(1) does not require or allow the full payment of Debtors' attorney fees to be delayed in favor of payments to a secured creditor, unless Debtors' counsel has agreed to such delay." *Id.* at 758. In doing so, the *Harris* court rejected the argument that a secured creditor must receive compensation each month after confirmation for the decline in value of its collateral, noting that:

> In effect, [the secured creditors] would have the Court interpret [pre-BAPCPA section 1325(a)(5)(B)(i) ] as if it stated

that the holder of a secured claim must "retain the value of the lien securing such claim." But the statute does not say this—it merely says that the holder must "retain the lien securing such claim." To accept the creditors' argument is to add into § 1325(a)(5)(B) a requirement that Congress did not put there.

*Id.* at 763. Post–BAPCPA Section 1325(a)(5), however, *does* require adequate protection for the value of the creditor's security interest where the creditor's claim is secured by personal property. *See In re Hill*, 397 B.R. 259, 264 (Bankr. M.D.N.C. 2007) (holding that if a creditor is secured by personal property, then Section 1325(a)(5)(B)(iii)(II) requires that the amount of the monthly payment must be sufficient to provide adequate protection to the creditor).

In addition to the mortgages against the Debtor's Property, MainSource is also secured by a properly perfected lien on the rents payable to the Debtor from the Property. Cash Collateral Order ¶ 1. To propose a confirmable plan, the Debtor's plan must provide that MainSource will receive payments during the period of the plan in an amount sufficient to adequately protect MainSource's security interest in the rents received by the Debtor. 11 U.S.C. § 1325(a)(5)(B)(iii)(II). Therefore, unlike the secured creditors in *Harris*, MainSource is entitled to protection against the diminution of value in its security interest in the Debtor's personal property pursuant to Section 1325(a)(5)(B)(iii)(II).

To address the dueling requirements of Section 1325(a)(5)(B)(iii)(II) and Section 1326(b)(1), the Debtor proposes to make monthly adequate protection payments directly to MainSource while concurrently making monthly payments to the Receiver on its allowed administrative expense claim. The Debtor's Plan further provides that the balance of the Receiver's administrative expense claim will be paid in full before or at the time of the payment of any other claims under the Plan.[5] This Court concludes that the Debtor's proposal fairly reconciles these two statutory provisions.

The court in *In re Rogers*, 500 B.R. 537 (Bankr. W.D. Mich. 2013) addressed a similar clash between the payment of administrative expense claims and the payment of regular mortgage payments on the debtor's primary residence. The *Rogers* court found that the "plain meaning of § 1322(b)(2), and its anti-modification provision, requires a chapter 13 plan to pay the on-going regular mortgage payments as they become due." *Id.* at 546. Interpreting "*Harris* as adopting a plain meaning analysis that [administrative expense claims] must be first paid under § 1326(b)(1)," the court noted that there may be conflicting priorities if there are not sufficient funds available to fully pay both obligations. *Id.* The *Rogers* court

---

**5.** The Debtor's prior plan [Docket Number 94] provided for a lump sum payment to MainSource and certain judgment lien creditors upon the sale of certain of the Debtor's properties prior to payment in full of the Receiver's asserted administrative expense claim. During oral argument, this Court questioned the Debtor's basis for the lump sum payment provision as it relates to Section 1326(b)(1). This Court further raised concerns as to the good faith nature of the lump sum payment provision. The Debtor subsequently modified her plan to provide for payment in full of the remaining balance, if any, of the allowed administrative expense claim of the Receiver, including the Receiver's attorney fees, from the sale of properties concurrent with the payment of the mortgage and certificate of judgment liens against those properties.

found that it was "relatively simple" to reconcile these competing priorities. *Id.* Absent consent, the requirements of § 1322(b)(2) mandate that a protected mortgage cannot be modified by a chapter 13 plan, as would be the case if the mortgage payments were deferred until administrative expense claims were paid in full. *Id.* In contrast, the *Rogers* court noted that "§ 1326(b)(1) does not *require* [administrative expense claims] to be first paid. They may be paid first or concurrently with payments to creditors." *Id.* (emphasis in original).[6]

The competing priorities between Sections 1325(a)(5)(B)(iii)(II) and 1326(b)(1) may be similarly resolved. Section 1325(a)(5)(B)(iii)(II) requires payments in an amount sufficient to adequately protect MainSource's security interest in the Debtor's personal property while Section 1326(b)(1) permits concurrent payments to creditors. Accordingly, the Debtor's proposal to make adequate protection payments to MainSource concurrently with monthly payments on the Receiver's allowed administrative expense claim before making payments on any other claims satisfies the requirements of both code provisions. *See In re Hill*, 397 B.R. at 271–72

(holding that administrative expense claims "may be paid each month after the payment of the adequate protection payment that is required by Section 1325(a)(5)(B)(iii)(II)").[7]

### III. Conclusion

For the reasons stated above, this Court concludes that: (i) the Receiver's claim is not perfected by a judicial lien; (ii) the Bankruptcy Code, rather than the Receivership Order's priority scheme, provides the exclusive system for determining priority of claims in a bankruptcy case; and, (iii) Bankruptcy Code Section 1326(b)(1) permits concurrent monthly payments of any allowed administrative expense claim in favor of the Receiver together with monthly adequate protection payments to MainSource before making payments on any other claims.

SO ORDERED.

---

6. The Receiver cites the unreported decision of *In re Hammon*, 2015 Bankr. LEXIS 2446, 2015 WL 4462179 (Bankr. W.D. Mich. July 21, 2015) for the proposition that even if there is a non-modifiable mortgage, a chapter 13 plan must provide for the full payment of administrative expense claims as well as the monthly mortgage payment. The issue in *Hammon*, however, was whether the plan, as proposed, could require the payment of administrative expense claims in full with any remaining funds being used to pay towards the monthly mortgage payment. *In re Hammon*, 2015 Bankr. LEXIS 2446, at *2-3, 2015 WL 4462179, at *1-2. The court held that "the Plan, as proposed, would result in an impermissible modification of the mortgage under Section 1322(b)(2) and thus cannot be confirmed." *In re Hammon*, 2015 Bankr.

LEXIS 2446 at *15, 2015 WL 4462179, at *6. The *Hammon* court never directly addressed the issue of whether a plan could provide for the payment of the regular mortgage payment while making payments towards the administrative expense claims.

7. *In re Hill* also addressed the interpretation of Section 1325(a)(5)(B)(iii)(I), which provides that if "property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I). The issue of equal monthly payments was not raised by the parties, therefore, this Court expresses no opinion on that issue.